UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

------------------------------------------------------
:
OSAMEDE BROWN,                         :          CASE NO. 5:15-CV-00014
:
         Plaintiff,                    :
:
vs.                                    :          OPINION & ORDER
:          [Resolving Doc. 1]
CAROLYN V. COLVIN, Acting              :
Commissioner of Social Security,       :
:
         Defendant.                    :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this social-security disability benefits case, Plaintiff Osamede Brown objects to the Magistrate Judge's Report and Recommendation, which recommends affirming the Administrative Law Judge's ("ALJ") denial of benefits. Because the ALJ had substantial evidence supporting his decision, the Court **ADOPTS** the recommendation of the Magistrate Judge and **AFFIRMS** the ALJ's denial of benefits.

## I. Background

On May 10, 2011, Brown filed applications for Supplemental Security Income. She alleged a January 1, 2010 disability onset date. After her applications were denied initially and upon reconsideration, Brown requested a hearing before an ALJ.

Brown appeared with counsel at a hearing before ALJ Michael Kaczmarek.[1] Brown testified that she has experienced seizures since she was nine years old and that they prevent her from

---

[1] Doc. 11 at 73–122.

Case No. 5:15-cv-00014
Gwin, J.

working.[2]

Vocational expert Brian Womer ("VE") testified that there would be work available for a hypothetical individual the same age as and with the same education and work history as Brown who has an Residual Functional Capacity with no exertional limitations but with the following limitations: can never climb ladders, ropes, and scaffolds; must avoid all exposure to hazards such as inherently dangerous moving machinery and unprotected heights; must avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, gases, and areas of poor ventilation; and no commercial driving.[3]

The VE indicated that if an individual would be absent from work two days per month, the individual would not be able to maintain the jobs the VE identified and there were no additional jobs that the VE could identify.[4]

On August 6, 2013,  the ALJ determined that Brown was not disabled within the meanings of the Social Security Act. Magistrate Judge Burke summarized the ALJ's findings as follows:

> 1. Brown had not engaged in substantial gainful activity since May 10, 2011, the application date.[5]
>
> 2. Brown had the following severe impairments: seizure disorder diagnosed as complex partial seizures with history of *grand mal* seizure diagnosis, status post ("s/p") February 2008 left temporal lobectomy; history of asthma progressing to chronic obstructive pulmonary disease ("COPD"); morbid obesity; narcolepsy versus hypersomnia, NOS. Tr. 45. Brown had the following non-severe impairments: vitamin-D deficiency; Chiari I malformation; migraine headaches; obstructive sleep apnea; carpal tunnel syndrome; and adjustment disorder with mixed depressed mood

---

[2]/Brown's arguments relate primarily to the ALJ's consideration of evidence regarding her seizures. Thus, the evidence summarized herein relates generally to Brown's seizures.

[3]/Doc. 11 at 112–113.

[4]/*Id.* at 115–116.

[5]/*Id.* at 45.

Case No. 5:15-cv-00014
Gwin, J.

and anxiety.[6]

3. Brown did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including Listings 11.02 – *Convulsive epilepsy* - and 11.03 – *Nonconvulsive epilepsy*.[7]

4. Brown had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: can never climb ladders, ropes, or scaffolds; should avoid all exposure to hazards, such as inherently dangerous moving machinery and unprotected heights; cannot engage in commercial driving; should avoid concentrated exposure to excessive heat, cold, and humidity and to environmental irritants such as fumes, odors, dust, gases, and areas of poor ventilation; can understand, remember, and carry out simple, routine, and repetitive tasks that could be learned in 30 days or less; and requires a low stress, static work environment with infrequent changes, and those changes that did occur would be explained and/or demonstrated to her; with no fast pace or strict production/time quotas; and with her not being responsible for the health or safety of others.[8]

5. Brown had no past relevant work.[9]

6. Brown was born in 1985 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[10]

7. Brown had at least a high school education and was able to communicate in English.[11]

8. Transferability of job skills was not an issue because Brown did not have past relevant work.[12]

9. Considering Brown's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Brown could perform, including hand packager, machine packager, and kitchen helper.[13]

---

[6] *Id.* at 45–49.

[7] *Id.* at 49–51.

[8] *Id.* at 51–61.

[9] *Id.* at 61.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 61–62.

Case No. 5:15-cv-00014
Gwin, J.

Brown filed this complaint, and the Court referred the matter to Magistrate Judge Kathleen B. Burke.  Magistrate Judge Burke issued a Report and Recommendation, finding that the ALJ's determination was supported by substantial evidence and recommending that the Court deny Brown's appeal.[14]  Specifically, the Magistrate Judge found:  (1) that the ALJ evaluated the treating source opinions in accordance with the treating physician rule (2) that the ALJ properly assessed Brown's credibility.[15]

Brown now objects to the R&R.[16]  This Court reviews the objections *de novo*.[17]  Brown argues that the ALJ's stated reasons for discounting the weight assigned to Dr. Kinast's and Dr. Bavis' opinions did not constitute "good reasons" under the relevant rules, regulations, and case law. Specifically, Brown contends that the ALJ's finding that Brown was non-compliant in taking her medication was misplaced and not reasonable.

## II. Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district court is limited to reviewing whether the ALJ's decision is "supported by substantial evidence and is made pursuant to proper legal standards."[18]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]  A district court should not

---

[14]/Doc. 16.

[15]/*Id.*

[16]/Doc. 17.

[17]/28 U.S.C. § 636(b)(1) (requiring *de novo* review of the claimant's objections to a report and recommendation).

[18]/*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).

[19]/*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

-4-

Case No. 5:15-cv-00014
Gwin, J.

try to resolve "conflicts in evidence or decide questions of credibility,"[20] and may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[21]

To establish disability under the Social Security Act, Plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[22] Plaintiff's impairment must prevent her from doing her previous work or any other work existing in significant numbers in the national economy.[23]

### III. Discussion

A. *The ALJ's stated reasons for discounting the testimony of Dr. Kinast and Dr. Bavis constituted "good reasons."*

First, Brown argues that the ALJ's stated reasons for discounting the weight assigned to Dr. Kinast's and Dr. Bavis' opinions did not constitute "good reasons." However, this Court agrees with the Magistrate Judge that the ALJ did substantiate his decision with "good reasons."

Under the treating physician rule, "treating source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other

---

[20] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

[21] *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

[22] *See* 42 U.S.C. 423(d).

[23] *Id.*

Case No. 5:15-cv-00014
Gwin, J.

substantial evidence in [the] case record."[24]

However, an ALJ is allowed to give a treating source's opinion less controlling weight so long as he gives "good reasons" for doing so. "Good reasons" are reasons that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.[25]

In deciding the weight to be given to the treating physician's opinion, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as w hole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.[26] However, the ALJ is not required to provide "an exhaustive factor-by factor analysis."[27]

First, the ALJ explained his decision to give little weight[28] to the opinions of Drs. Kinast and Bavis by reiterating, "their reports that the claimant is fully compliant with taking her medications is deterred by evidence to the contrary, seriously weakening the accuracy and persuasiveness of their opinions."[29] Here, the ALJ was referring to the fact that Brown's lab work has consistently showed subtherapeutic phenytoin levels, i.e., less than 10 mg/L.[30] The ALJ reasoned that these subtherapeutic anticonvulsant levels demonstrated Brown's lack of compliance with taking her

---

[24] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c )(2)).
[25] *Gayheart*, 710 F.3d at 376.
[26] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).
[27] *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).
[28] The ALJ gave little weight to Brown's treating physician's opinions that she would likely miss two or more days of work per month as a result of her symptoms and that her seizures would be disruptive in the work environment. However, the ALJ gave  partial weight to the balance of Brown's treating physicians' opinions that environmental limitations would be required but exertional limitations would not be required and Brown could handle "moderate stress."
[29] Doc. 11 at 60.
[30] *Id*. at 57.

-6-

Case No. 5:15-cv-00014
Gwin, J.

medication and thus undermined Drs. Kinast and Bavis' opinions that Brown was compliant with taking her medication.

Further, the ALJ cited two emergency room visits made by Brown in 2012. On February 28, 2012, Brown presented to Mercy Medical Center's emergency room for a seizure. The emergency room physician noted that Brown, "admitted that she has been cutting back on her benzos because she was feeling dizzy and so she thought it was part of the Dilantin."[31] The physician noted his impression as "acute breakthrough seizure secondary to noncompliance." Brown received counsel on the need to take her Dilantin or otherwise risk breakthrough seizures.

On April 4, 2012, Brown had a seizure while visiting her sister at Mercy Medical Center. Brown's Dilantin levels were recorded as less than 0.4 mh/L, and the emergency room physician's diagnosis of seizure noted a belief that Brown had a seizure because of noncompliance and stress.[32]

The ALJ did not err in not considering Brown's metabolic or absorption rates as a possible explanations for her subtherapeutic anticonvulsant levels. A finding that an individual's specific issues with absorption or metabolism of the drug is the cause of subtherapeutic levels "must be based on specific descriptive evidence provided by the treating physician."[33]

Here, the treating physicians presented no such evidence. In fact, Dr. Kinast did not answer a question on the physician questionnaire related to any recent subtherapeutic levels.[34]

Further, the ALJ did not err in not re-contacting Dr. Kinast for clarification of his opinion because the ALJ was able to reach a determination regarding Brown's disability upon examining

---

[31]/*Id*. at 564.
[32]/*Id*. at 558.
[33]/SSR 87-6, *The Role of Prescribed Treatment in the Evaluation of Epilepsy*, 1987 WL 109184 (1987).
[34]/Doc. 11 at 338.

Case No. 5:15-cv-00014
Gwin, J.

the whole record.[35]

Moreover, the ALJ's other stated reasons for discounting Drs. Kinast and Bavis' opinions constitute "good reasons." The ALJ noted that examining the entire record revealed that most of Brown's seizures occurred at nighttime, thus undermining Dr. Kinast's opinion that Brown's seizures would likely disrupt co-workers at work.[36] The ALJ similarly did not err in considering the fact that the postical manifestations of Brown's seizures and sleepiness were primarily documented by the treating physicians based on subjective reports rather than objective medical findings.

Finally, although the ALJ did note the possibility of bias on the part of Dr. Kinast, that was not the ALJ's sole reason for discounting Dr. Kinast's testimony.

Accordingly, the ALJ properly concluded that Brown is capable of performing a limited range of work.

B.  *The ALJ's assessment of Brown's credibility was proper.*

Because Plaintiff objected to the Report and Recommendation in whole, this Court assumes that Plaintiff objects to the Magistrate Judge's finding that the ALJ properly assessed Brown's credibility. This Court agrees with the R&R on this point.

A reviewing court may not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."[37] In reviewing an ALJ's credibility determination, a court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [the

---

[35]An obligation to recontact a treating physician arises "only when the information received is inadequate to reach a determination on claimant's disability status, not where . . . the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156, n. 3 (6th Cir. 2009); *see also Ferguson*, 628 F.3d at 274-275 (relying on and quoting *Poe*, 342 Fed. Appx. 149, 156, n. 3).

[36]Doc. 11 at 60.

[37]*Gaffney v. Bowen*, 825 F.2d 98 (6th Cir. 1987).

-8-

Case No. 5:15-cv-00014
Gwin, J.

claimant's testimony] are reasonable and supported by substantial evidence in the record."[38/]

This Court finds that the ALJ's explanations for partially discrediting Brown's credibility are reasonable and supported by substantial evidence in the record. Here, the ALJ considered a number of factors including: the aforementioned medication compliance issue, discrepancies between Brown's testimony and her mother's testimony as to the length of the seizures, the limited number of grand mal seizures, Brown's daily activities, and Brown's prior work history.[39/] The ALJ properly considered these factors in the record. The ALJ's conclusion that together this evidence undermined Brown's credibility was both reasonable and supported by substantial evidence in the record.

### IV. Conclusion

For these reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **AFFIRMS** the ALJ's denial of SSI benefits.


IT IS SO ORDERED.



Dated: November 18, 2015                       s/       *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE

---

[38/] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).
[39/] Doc. 11 at 56–59.